

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1233-LKuF |
| SHARON MARY ADAMS, | Bk. No. 8:13-bk-20139-CB |
| Debtor. | Adv. No. 8:14-ap-01049-CB |
| GARY ZIEBARTH; PAMELA ZIEBARTH, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| SHARON MARY ADAMS; DAVID BRENT ADAMS, | |
| Appellees. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – August 5, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

––––––––––

Appearances:     David Bruce Dimitruk argued for Appellants; William J. Wall argued for Appellee Sharon Adams; Fritz J. Firman argued for Appellee David Brent Adams.

––––––––––

Before: LAFFERTY, KURTZ, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellants Gary and Pamela Ziebarth appeal the bankruptcy court's judgment in favor of Appellees on the Ziebarths' claims under §§ 523(a)(2)(A), (a)(4), and 727(a)(4)(A)[1] and their objection to Appellee Sharon Adams' exemptions in her retirement accounts. The bankruptcy court found that the Ziebarths did not establish at trial that Sharon intended to defraud the Ziebarths or that misstatements in her schedules were made with fraudulent intent.

The bankruptcy court also dismissed certain causes of action against Sharon and her nondebtor husband, Appellee David Brent Adams ("Brent"), for failure to state a claim.

We AFFIRM in part, VACATE in part, and REMAND.

––––––––––

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

Debtor Sharon Adams is married to Brent Adams. Brent is Pamela Ziebarth's nephew; Pamela is married to Gary Ziebarth. Brent owned rental property on Bernard Street in Costa Mesa, California (the "Bernard Property").[2] In 2007, Brent sought a loan to fund improvements on the Bernard Property. Bank of America was willing to make the loan, but only if Sharon and the Ziebarths co-signed the loan. The Ziebarths agreed to co-sign, and in August 2007 the parties entered into a non-revolving line of credit agreement with Bank of America for $600,000. A condition of the loan was the borrowers' agreement to "use the proceeds of [the line of credit] only for financing the construction of a new single family residence plus garage in Costa Mesa, California." The loan and all outstanding interest were due October 31, 2008.

Apparently due to a delay in obtaining a building permit to construct the new dwelling and garage, the construction could not be completed before the due date of the line of credit. No building permit was ever obtained, and no new residence was constructed on the Bernard Property.

Nevertheless, between August 2007 and May 2008, Brent withdrew the entire $600,000 from the line of credit and placed it into his account at

---

[2]According to the parties' joint pretrial conference stipulation, Brent initially took title to the Bernard Property as his sole and separate property, but at various times Sharon's name was put on title to enable Brent to obtain refinancing and then removed.

Bank of America, then transferred it to his account at First Republic Bank. The record is unclear as to what the funds were spent on, but the parties stipulated that they were not spent on new construction at the Bernard Property.

In October 2008, the Ziebarths paid off the line of credit. Shortly thereafter, they sued the Adamses and others for breach of contract, money had and received, money lent, contribution, intentional misrepresentation, and breach of fiduciary duty.

On December 20, 2013, with a trial pending in the state court litigation, Sharon filed an emergency chapter 7 petition. She filed her schedules shortly thereafter. On Schedule A, she listed the Bernard Property with the notation "*Spouse's Separate Property." On Schedule D, she listed a first deed of trust against the Bernard Property in favor of Ocwen for $597,373, and a second lien in favor of "Chase" for $228,000, again with the notation, "*Spouse's Separate Property."[3] On Schedules I and J, Sharon included Brent's monthly gross business income and the expenses associated with the Bernard Property, including a mortgage payment of $3,260.70. She also listed annual rental income of $45,000 per year for the years 2011-2013 on her Statement of Financial Affairs. On Schedule B, she listed 50 percent interests in Image Driven, Inc., and

---

[3]She also listed two judgment liens against the Bernard Property with the same notation.

4

Corporate Lending, LLC, each valued at zero. She also listed two retirement accounts, a 401k worth $47,274.15 and an IRA worth $182,843, for a total of $212,843. On Schedule C, she claimed those accounts fully exempt under California Civil Procedure Code § 703.140(b)(10)(E).

The Ziebarths filed an adversary complaint naming both Sharon and Brent as defendants and asserting three claims for relief. In their first claim, the Ziebarths sought to except the amount owed to them from discharge under §§ 523(a)(2)(A) and (a)(4) as to both Sharon and Brent; in their second claim, they sought denial of discharge under § 727 as to Sharon; and, alternatively, their third claim sought disallowance of Sharon's claimed exemptions in her retirement accounts. In their prayer for relief, the Ziebarths sought a declaration that Brent was obligated to them for their damages, and if Brent filed a chapter 7 petition, the debt would not be dischargeable in his case. Shortly thereafter, the parties stipulated to relief from the automatic stay to complete the state court litigation.[4]

In the meantime, Sharon and Brent moved under Civil Rule 12(b)(6) (applicable via Rule 7012) to dismiss both § 523 claims against Brent and the § 523(a)(4) claim and the objection to exemption claim against Sharon. They argued that the court lacked jurisdiction over the claims against

_____

[4]Although the bankruptcy court orally granted stay relief, no written order was ever entered. The bankruptcy court docket reflects that Sharon filed an objection to the form of order submitted by the Ziebarths, which was apparently never resolved.

5

Brent. As for Sharon, they argued that the complaint did not allege facts establishing a fiduciary relationship between Sharon and the Ziebarths and that the allegations with respect to the exemption were "based upon mere possibility, suspicion, and speculation." The Ziebarths filed an opposition, and, after a hearing, the bankruptcy court dismissed the complaint in its entirety as to Brent, without leave to amend. The court also granted the motion as to the § 523(a)(4) claim and the objection to exemptions against Sharon, but with leave to amend.[5]

In the meantime, the parties unsuccessfully attempted mediation. Thereafter, in September 2014, the Ziebarths amended their complaint. The first amended complaint ("FAC") omitted the prayer for relief against Brent and re-alleged nondischargeability under §§ 523(a)(2)(A), and (a)(4) and objection to discharge under § 727 based on false oaths. The FAC also re-alleged the objection to Sharon's exemptions in her retirement accounts. The FAC also added a claim under § 523(a)(2)(B).

Sharon filed another Civil Rule 12(b)(6) motion. The motion was based on the Ziebarths' failure to adequately allege a fiduciary relationship or that Sharon intentionally made oral or written misrepresentations. Sharon also sought dismissal of the § 727 claim as untimely, and she sought

---

[5]The order on the motion to dismiss is confusing because it states "[t]he Motion is granted **WITH** leave to amend as to the claims under 11 USC § 727 regarding the retirement accounts against defendant Sharon Mary Adams." But the complaint did not allege a § 727 claim based on the retirement accounts.

dismissal of the objection to exemptions on grounds that she would need the retirement accounts when she retired. The bankruptcy court granted the motion to dismiss without leave to amend as to the §§ 523(a)(2)(B) and (a)(4) claims. The court denied the motion as to the claims under §§ 523(a)(2)(A) and 727(a)(4). In its oral ruling, the court stated that the objection to exemptions was "too late" but did not elaborate on that comment. The court's written order stated in part, "[t]he Motion is granted as to the claims under 11 U.S.C. 727 regarding the retirement accounts WITHOUT leave to amend."[6] The Ziebarths appealed the court's order to this Panel (BAP No. CC-15-1017), which dismissed the appeal in April 2015 as interlocutory.

In May 2015, the state court entered judgment after trial in favor of the Ziebarths in the amount of $600,000 on their breach of contract claim and their breach of fiduciary duty claim against Brent only. The state court did not find an intent to defraud.[7]

---

[6]Again, it is not clear why the order contained a reference to § 727 with respect to the objection to exemptions. The FAC invoked Rule 4003 and did not allege that the exemptions were a ground for denial of discharge but simply requested that the exemptions be disallowed.

[7]The state court judgment and findings were not included in the excerpts of

(continued...)

Sharon then moved for summary judgment seeking dismissal of the §§ 523(a)(2)(A) and 727(a)(4) claims, the former on the ground of issue preclusion and the latter on the ground that there was no triable issue of material fact. The bankruptcy court denied the motion.

The parties then stipulated to permit the Ziebarths to amend their complaint for the second time. The amendment was sought primarily due to the Ziebarths' alleged discovery of a prepetition conspiracy between Brent and Sharon that consisted of forming an entity, Chase One LLC ("Chase One") and then fraudulently recording a deed of trust in favor of Chase One to encumber the Bernard Property. The Ziebarths alleged that the purpose of the scheme was to conceal both the equity and Sharon's alleged interest in the Bernard Property.

In sum, the second amended complaint ("SAC") filed in September 2016 alleged claims for a declaration of nondischargeability under three separate theories: (1) fraud (§ 523(a)(2)(A)); (2) breach of fiduciary duty (§ 523(a)(4)); and (3) embezzlement (§ 523(a)(4)). The SAC also included a claim objecting to discharge under § 727 based in part on Sharon's alleged false statements on her bankruptcy schedules regarding the Chase One

---

[7](...continued)
 record. They were filed with the bankruptcy court. We have thus exercised our discretion to review the bankruptcy court's electronic docket and pleadings. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

deed of trust. Finally, notwithstanding the court's previous dismissal of the Ziebarths' objection to Sharon's exemptions in her retirement accounts, the SAC included that claim for relief "for the purpose of preserving the claim in the event of a subsequent appeal."

Trial took place on June 12 and 13, 2017, and December 18, 2017. Witnesses Gary and Pamela Ziebarth, Sharon Adams, and her bankruptcy counsel William Cumming submitted their direct testimony by declaration. Each of those witnesses was examined at trial, along with Sharon's friend, Janet DeMarco, and Brent Adams.

Sharon testified that she had included on her schedules the Bernard Property and its associated income and expenses on the advice of her counsel, Mr. Cumming. She also explained that the information regarding the Bernard Property had been supplied to her by Brent, including the information with respect to the Chase One deed of trust. In addition, she stated that much of the financial information was gleaned from credit reports. She testified that she believed the Chase One deed of trust was valid. She also testified that, until the litigation commenced, she was not aware that a previous second deed of trust in favor of JP Morgan Chase Bank encumbering the Bernard Property had been canceled and reconveyed in February 2013 pursuant to the National Mortgage Settlement. Thus, she believed that the Chase One deed of trust was that obligation. She testified she had no prior knowledge of the circumstances

9

surrounding the formation of Chase One or the recording of the deed of trust.

With respect to her interests in Brent's businesses listed on Schedule B, Sharon testified that although the schedules showed she had a 50 percent interest, in reality she had no interest in either business. She did not know why the 50 percent interest was listed.

Regarding the Bank of America loan, Sharon testified that she was not involved in arranging the loan with Bank of America and in fact was unaware of the loan until Brent asked her to sign the loan agreement. Further, she testified that, although she knew Brent wanted to make improvements on the Bernard Property, she did not notice the language in the loan agreement restricting the use of the funds to the building of a single family home and garage. Sharon further testified that at the time the documents were signed, she believed that the improvements to the Bernard Property would generate equity sufficient to refinance the loan before the due date.

Mr. Cumming corroborated Sharon's testimony regarding the schedules, explaining that he had advised her to include all of Brent's assets and income on her schedules out of an abundance of caution and in the interest of full disclosure. He confirmed that Brent had supplied the information on his finances, including the information regarding the Chase One deed of trust as well as a copy of that document. He also testified that

although there were no monthly payments due on that obligation (it called for a balloon payment due December 31, 2020), he included a payment on the means test by dividing the total amount that would be owed by the number of months in the loan term. Mr. Cumming further testified that he did not initially realize that the creditor was not affiliated with any JP Morgan Chase entity until the Ziebarths filed their opposition to Sharon's motion for summary judgment. He also had not noticed that the recording date on the Chase One deed of trust was the same as the petition date.

Brent corroborated Sharon's testimony that the couple kept their finances separate. He testified that he had caused Chase One to be formed in December 2013–but he does not own it–and that he received the deed of trust on December 20, 2013, signed it, and had it notarized and recorded. He also testified he never received any money from Chase One.[8] But he did not recall ever discussing the formation of Chase One or the deed of trust with Sharon. Sharon was recalled to the stand, at which time she testified that she knew nothing about Brent's actions with respect to the Chase One deed of trust and was not aware that he had recorded it hours before her

---

[8]During Brent's testimony, the court stated: "The totality of the circumstances make it really obvious what was done here. You used an asset protection vehicle to drain off the equity. Well, in part because of the–the litigation but also because your wife was about to file bankruptcy." Trial Tr. (Jun. 13, 2017) at 181:5-9. Brent replied that he did not believe that to be true.

11

case was filed. Her testimony was that she instructed Mr. Cumming to file the petition on December 20 to avoid going through with the state court trial that was scheduled for December 23.

In the Ziebarths' trial declarations, they each testified that either Sharon or Brent (their accounts differed) had approached them about helping to obtain financing to build another residence and garage on the Bernard Property and that they ultimately agreed to co-sign the loan agreement with Bank of America based on that representation and their close family relationship with the Adamses. They asserted that, had they known the funds would be used for other purposes, they would not have signed the loan agreement. Their live testimony essentially corroborated what was in their declarations, with Gary conceding that the only representation Sharon made was "touting Brent's ability to do the job," and that he believed she was sincere. Trial Tr. (Dec. 18, 2017) at 123:1-7.

After trial, the bankruptcy court took the matter under submission and entered its Statement of Decision After Trial and a judgment in favor of Sharon on all claims. With the exception of Brent, the court found all of the witnesses to be credible, but the testimony and evidence presented at trial did not establish the facts necessary for the Ziebarths to prevail on their claims. Specifically, the court found: (1) the evidence did not establish that Sharon knowingly made material false representations to the Ziebarths

12

with the intent to deceive;[9] (2) the Ziebarths had presented no evidence of an express trust or that their claim arose from fraud or defalcation by Sharon; (3) the testimony of Sharon and her former counsel at trial was sufficient to explain the misstatements in Sharon's schedules; and (4) no evidence or argument was presented at trial to support the Ziebarths' objection to Sharon's exemptions. Accordingly, the Ziebarths were not entitled to judgment on their claims under §§ 523(a)(2)(A), (a)(4), 727(a)(4), and their objection to exemptions.

The Ziebarths filed a motion under Civil Rule 59 (applicable via Rule 9023) for a new trial or amended findings. After a hearing, the bankruptcy court denied the motion. The Ziebarths timely appealed.

## JURISDICTION

Subject to the discussion below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B), (I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in dismissing Brent Adams from the adversary proceeding?

Did the bankruptcy court err in dismissing the claim under

---

[9]Although the bankruptcy court did not highlight this in its decision, at trial it pointed out that the representation in the loan agreement regarding the use of the line of credit proceeds was made to Bank of America, not the Ziebarths. Trial Tr. (Dec. 18, 2017) at 28:5-6.

13

§ 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity?

Did the bankruptcy court err in dismissing the objection to exemption claim?

Did the bankruptcy court err in entering judgment for Sharon on the Ziebarths' § 523(a)(2)(A) claim?

Did the bankruptcy court err in entering judgment for Sharon on the Ziebarths' § 523(a)(4) claim for embezzlement?

Did the bankruptcy court err in entering judgment for Sharon on the Ziebarths' § 727(a)(4) claim?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decision to grant a motion to dismiss under Civil Rule 12(b)(6). *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

When reviewing a bankruptcy court's determination of an exception to discharge claim under § 523, we review its findings of fact for clear error and its conclusions of law de novo. *See Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 28 (9th Cir. BAP 2009). "Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 63 (9th Cir. BAP 1998)

14

(citing *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996)).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985).

"When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *In re Retz*, 606 F.3d at 1196 (quoting *Anderson*, 470 U.S. at 575).

We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

## DISCUSSION

### A.   The bankruptcy court's Civil Rule 12(b)(6) rulings.

In reviewing the bankruptcy court's decision on a motion to dismiss, we apply the same standards to Civil Rule 12(b)(6) dismissal motions that all other federal courts are required to apply. *In re Belice*, 461 B.R. at 572–73. Under Civil Rule 12(b)(6), made applicable in adversary proceedings by

15

Rule 7012, the trial court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). As the Supreme Court has explained:

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). In reviewing the sufficiency of a complaint under Civil Rule 12(b)(6), we must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, we do not need to accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

1. **The bankruptcy court did not err in dismissing the claims against Brent Adams for lack of jurisdiction.**

The initial complaint included claims against Brent under § 523(a)(2)

16

and (a)(4), a declaration that any debt owed to the Ziebarths by Brent would not be dischargeable in any subsequent bankruptcy case, and a prayer for the court to enter an order and judgment determining that "David Brent Adams is obligated to the Ziebarths for the damages that they have sustained."

The bankruptcy court dismissed the complaint as to Brent because he was not a debtor and thus the court had no jurisdiction over the § 523 claims with respect to Brent. We see no error in this disposition.

The Ziebarths argue that the complaint alleged a "common nucleus of operative facts" sufficient to support "related to" or supplemental jurisdiction. Rejection of this argument does not require extensive analysis. "Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (citing U.S. Const., art. III, § 2). Thus, federal courts lack the "power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (citation omitted).

Simply put, the court had no jurisdiction under any theory over the claims against Brent arising under the Bankruptcy Code given his status as a nondebtor who was not entitled to a discharge in Sharon's case. Moreover, the bankruptcy court was not at liberty to issue an advisory ruling as to nondischargeability in any future case. *See Elias v. Lisowski Law*

17

*Firm, Chtd. (In re Elias)*, 215 B.R. 600, 604 (9th Cir. BAP 1997), *aff'd*, 188 F.3d 1160 (9th Cir. 1999). To the extent the Ziebarths sought to have the bankruptcy court liquidate their damages, they accomplished that in the state court litigation. There was no case or controversy.

    **2.    The bankruptcy court did not err in dismissing the § 523(a)(4) claim against Sharon for fraud or defalcation while acting in a fiduciary capacity.**

The bankruptcy court dismissed the § 523(a)(4) claim contained in the FAC without leave to amend because the facts alleged did not support the existence of a fiduciary relationship within the meaning of that Code section. We find no error in that ruling.

The Ziebarths argue that their allegations of a close family relationship and their reliance on the Adamses' representations and the loan agreement's requirement as to the use of the funds sufficiently supported the allegation of a fiduciary relationship. But those arguments appear to be based on the assumption that a fiduciary relationship under § 523(a)(4) is the same as that under state law. It is not. As the Ninth Circuit Court of Appeals has explained:

> We have adopted a narrow definition of "fiduciary" for purposes of § 523(a)(4). Under such definition, the broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable. As the pre-eminent bankruptcy treatise explains, "[f]or purposes of section 523(a)(4), the definition of 'fiduciary' is narrowly construed, meaning that the applicable nonbankruptcy law that

creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property." 4 Collier on Bankruptcy, ¶ 523.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

> While we may consult state law . . . when interpreting whether an individual is a "fiduciary" under Section 523(a)(4), we ultimately are interpreting a federal statute, and the issue presented is one of federal law. Thus, the mere fact that state law places two parties in a relationship that may have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under 11 U.S.C. § 523(a)(4). Indeed, if applicable nonbankruptcy law does not clearly and expressly impose trust-like obligations on a party, courts will not assume that such duties exist and will not find that there was a fiduciary relationship.

> Further, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. Thus, Section 523(a)(4) applies only to a debt created by a person who was already a fiduciary when the debt was created.

*Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1050–51 (9th Cir. 2015) (additional citations, alterations, and internal quotations omitted).

In addition to several California cases, which are inapplicable, the Ziebarths cite *Day Care-Sam Furr, LLC v. Ross (In re Ross)*, 478 B.R. 715 (Bankr. W.D.N.C. 2012), for their argument that they sufficiently pleaded a fiduciary relationship. That case does not help the Ziebarths. Besides the

fact that it is not a Ninth Circuit case, the court in *Day Care-Sam Furr* did

not explicitly analyze whether a fiduciary relationship existed sufficient to

support a § 523(a)(4) claim. Nor did it need to, as it concluded that the

defendant had stolen money from the plaintiffs. Thus, it appears the court

based its ruling on embezzlement or larceny.

The bankruptcy court did not err in dismissing the § 523(a)(4) claim

for fraud or defalcation while acting in a fiduciary capacity.

**3.      The bankruptcy court erred in dismissing the Ziebarths'
objection to exemption claims.**

In their original complaint, the Ziebarths alleged that the

approximately $200,000 in Sharon's retirement accounts was "not

reasonably necessary for the support of the debtor and any dependent of

the debtor because the debtor's employment and earnings and other

sources of income are sufficient to pay for the support of debtor and her

dependents." At the hearing on Sharon's first Civil Rule 12(b)(6) motion,

the court stated with respect to the objection to exemptions:

> given what the numbers are, that is not an obnoxious amount
> to have in a retirement account for an individual, by any
> means. I mean, you know, if it were in the multi-millions, yeah,
> but we're not talking a lot of–I mean, making more than some
> people, but it's sure not enough to retire on. So, just, on a
> normal, human level, I'm not seeing anything beyond what
> people would need to retire on. In fact, I'm seeing not enough
> to retire on . . . .

Hr'g Tr. (Jul. 29, 2014) at 20:15-23. The court then granted the motion to

dismiss that claim, but with leave to amend.

The FAC added the allegation that, based on Sharon's income and age, she would have sufficient earnings over time to replenish the amounts she claimed as exempt. Additionally, the FAC alleged that Sharon was not obligated for all of the expenses claimed on her Schedule J. At the hearing on Sharon's second Civil Rule 12(b)(6) motion, the bankruptcy court stated that it would grant the motion to dismiss the objection to exemption claim because it was "too late." The bankruptcy court's order dismissed that claim without leave to amend.

The Ziebarths point out that this claim was included in their original complaint filed February 27, 2014, which was less than 30 days after the § 341 meeting of creditors, and was thus timely under Rule 4003(b)(1). We note, however, that the record does not reflect that the Ziebarths served the objection on the chapter 7 trustee as required under Rule 4003(b)(4).

Sharon claimed exemptions in the retirement accounts under California Civil Procedure Code § 703.140(b)(10)(E), which permits a debtor to exempt her right to receive "[a] payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . ." Once the debtor claims an exemption on her bankruptcy schedules, "the objecting party has the burden of proving that the exemptions are not

21

properly claimed." Rule 4003(c).

> In determining whether the amounts held in the accounts are necessary for debtor's and her dependent's support, the court is to consider the debtor's present and anticipated living expenses and income; the age and health of the debtor and his or her dependents; the debtor's ability to work and earn a living; the debtor's training, job skills and education; the debtor's other assets and their liquidity; the debtor's ability to save for retirement; and any special needs of the debtor and his or her dependents.

*Gonzalez v. Davis (In re Davis)*, 323 B.R. 732, 735 (9th Cir. BAP 2005) (citations omitted) (analyzing exemption under California Code of Civil Procedure § 704.115(b), which contains similar language).

Sharon argues that the Ziebarths waived this claim by failing to introduce any evidence at trial, and the bankruptcy court entered judgment on the claim for the same reason. But the bankruptcy court had dismissed this claim without leave to amend; the Ziebarths attempted to appeal the order, but the appeal was dismissed as interlocutory. There was no waiver.

And the bankruptcy court never made any findings on the sufficiency of the allegations supporting this claim. The court was correct that in general the trustee brings such an objection, and she did not do so in this case. But Rule 4003 does not limit standing to object to the trustee, as it provides that an objection to exemption may be brought by a "party in interest." It also appears that the objection was timely filed, even though it

22

was apparently not served on the trustee.[10] The FAC included specific factual allegations, including dollar amounts, as to Sharon's income based on her filed schedules and thus may well have been sufficient to support the claim at the pleading stage. But the bankruptcy court should have made this determination in the first instance. Accordingly, we must VACATE both the order and portion of the judgment dismissing this claim and REMAND for the bankruptcy court to enter findings as to the sufficiency of the complaint with respect to this claim.

**B.     The bankruptcy court did not err in entering judgment for Sharon on the Ziebarths' § 727(a)(4)(A) claim.**

Section 727(a)(4)(A) provides: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account." A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath. *In re Retz*, 606 F.3d at 1196. To prevail on this claim, the plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Id.* at 1197.

"In keeping with the 'fresh start' purposes behind the Bankruptcy

---

[10]We express no opinion on the impact, if any, of the failure to serve the trustee or the fact that the objection to exemption was not filed in the main case.

Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996). This does not alter the burden on the objector, but rather means that "actual, rather than constructive, intent is required" on the part of the debtor. *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009).

The bankruptcy court found that the Ziebarths were not entitled to judgment on this claim because, although there were inaccuracies in Sharon's schedules,

> both Defendant and her bankruptcy counsel were credible in their explanations as to why the petition and schedules were filled out the way they were. Defendant was also credible when she said she relied on her Bankruptcy Counsel for legal advice prior to and during her bankruptcy. And, both Defendant and her Bankruptcy Counsel were credible when they testified that they thought the Chase One LLC lien was legitimate.
>
> Again, the evidence pointed to Brent as the culpable individual, not Defendant.

The Ziebarths again complain about the bankruptcy court's lack of findings, contending there were 62 false oaths in the schedules. They argue that Sharon did not meet her burden to document the questioned transactions, citing *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268 (9th Cir. BAP 1990) (holding that when a creditor makes out a prima facie case, the

24

debtor who fails to respond with credible evidence cannot prevail in a § 727 case). They also argue that, despite being presented with the inaccuracies in her schedules, she "refused" to amend them. But there was no evidence in the record to support this argument. We note that the trustee filed a Report of No Distribution in February of 2014, and the Ziebarths have not argued that any of the amendments Sharon could have made would have resulted in the case being an asset case, i.e., that they were material. Sharon admits that there were inaccuracies in her schedules, but points out that the Ziebarths provided no evidence that they were prejudiced by the inaccuracies, i.e., that they were material. *See In re Retz*, 606 F.3d at 1198 ("An omission or misstatement that detrimentally affects administration of the estate is material." (Citation omitted)).

Importantly, the Ziebarths have pointed to no evidence that the inaccurate statements were made knowingly or fraudulently. They instead attack Sharon's testimony as "another defiantly deceptive attempt to justify the false oaths." But the bankruptcy court found both Sharon's and her counsel's testimony credible, and we will defer to that finding.

## C. The bankruptcy court did not err in entering judgment for Sharon on the Ziebarths' § 523(a)(2)(A) claim.

Section 523(a)(2)(A) excepts from discharge debts incurred by "false pretenses, a false representation, or actual fraud . . . ." § 523(a)(2)(A). To prevail under § 523(a)(2)(A), a creditor must demonstrate five elements:

25

"(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1050 (9th Cir. 2014) (citations omitted). The creditor has the burden to establish these elements by a preponderance of the evidence. *Id.* Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992).

The bankruptcy court found that the Ziebarths did not prove that Sharon knowingly made material false representations to them with the intention and purpose of deceiving them. This finding is not clearly erroneous. At trial, both Sharon and Brent testified that the couple maintain separate finances and that Sharon was not involved with managing the Bernard Property. Sharon also testified that she was not involved in arranging the loan with Bank of America and in fact was unaware of the loan until Brent asked her to sign the loan agreement. Further, she testified that she did not notice the language in the loan agreement restricting the use of the funds to the building of a single family home and garage.

Additionally, the testimony supports the bankruptcy court's finding that

26

Plaintiffs tried to show that Defendant knew her husband was incapable of developing the Property, that she knew the proceeds of the Loan were going to be misappropriated, and that she purposefully misrepresented that the proceeds of the Loan would only be used in a certain manner.

However, the Defendant credibly testified to the contrary at trial. Indeed, Gary Ziebarth's statement that "she still believes in him" conflicts with this cause of action, **as it demonstrates Defendant did not know it was a false representation and, more importantly, that she did not intend to deceive Plaintiffs.**"

(Emphasis in original).

Sharon testified as follows:

Q. So you believed that he could increase the value of this property as of the date you signed the loan agreement?
A. I believe he thought he could.
Q. I'm asking you what you thought, not what he thought.
A. I had faith that he would do what he believed he could do.
Q. And did that include making improvements to the two existing structures?
A. I always thought he was doing the whole project, yes.

Trial Tr. (Dec. 18, 2017) at 47:20-48:3.

And Gary Ziebarth testified that he had only one contact with Sharon prior to the loan being made in which she touted Brent's ability to develop the Bernard Property. When asked whether he believed that Sharon believed that Brent could do it, he responded, "Yes. She still believes in him

today." *Id.* at 125:11-13.

To summarize, the trial testimony established that the only representation Sharon made to the Ziebarths regarding the loan was her belief that Brent could successfully develop the Bernard Property. The Ziebarths presented no evidence that Sharon knew Brent intended to use the loan proceeds for purposes other than those identified in the loan documents or that she had any intent to deceive.

Nevertheless, on appeal, the Ziebarths contend that the bankruptcy court misapplied the law because it did not consider "several aspects to Sharon's involvement in the deceptive plan." The Ziebarths point this Panel to *Sachan v. Huh (In re Huh)*, 506 B.R. 257 (9th Cir. BAP 2014) (en banc), in which the Panel considered the question of when it is appropriate to impute vicarious liability in an exception to discharge action based on fraud. The Panel held that "while the principal/debtor need not have participated actively in the fraud for the creditor to obtain an exception to discharge, the creditor must show that the debtor knew, or should have known, of the agent's fraud." *Id.* at 271–72. The Ziebarths contend that the bankruptcy court did not analyze the evidence under this standard or take into account the evidence of Sharon's participation in the management of the Bernard Property, her enjoyment of the proceeds from its operation, her knowledge of Brent's intentions for how the loan proceeds would be used, and her intent in helping Brent deceive the Ziebarths by signing the loan

28

agreement. But, as noted, Sharon testified (credibly, as found by the court) that she did not participate in the management of the Bernard Property nor did she realize that the loan proceeds were required to be used only for new construction and not for improvements to the existing structures. Thus, even if the bankruptcy court had applied the *Huh* standard, the evidence did not support a finding of vicarious liability.

Next, the Ziebarths argue that the bankruptcy court erred in basing its decision solely on the finding that Sharon made no false material misrepresentations to the Ziebarths and in not considering Sharon's "deceptive conduct." They contend that Sharon's signing of the loan agreement constituted a misrepresentation and that Sharon engaged in fraudulent conduct because she knew of Brent's "deceptive plan" to use the funds on the existing buildings on the Bernard Property, yet failed to inform the Ziebarths. They cite *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), in which the Supreme Court held that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." Again, however, Sharon's testimony belies any argument that she knowingly participated in a fraudulent scheme, wholly apart from the question of whether she made any false representations.

The Ziebarths then argue that the bankruptcy court "fused" the knowledge and intent elements. This argument is difficult to follow, but it

29

appears that they believe the bankruptcy court's findings were not broken down into the specific elements. As set forth above, the court found that Sharon's testimony did not support the Ziebarths' assertion that she knew the proceeds of the loan were going to be misappropriated or that she purposefully misrepresented how the proceeds of the loan would be used. This finding refers to both knowledge and intent. And failure to establish **either** knowledge of falsity **or** intent to deceive defeats the § 523(a)(2)(A) claim.

Nevertheless, the Ziebarths argue that the bankruptcy court ignored evidence that Sharon knew Brent planned to expend the loan proceeds on the existing buildings before she signed the loan agreement, pointing to specific "admissions" in her testimony. For example, Sharon testified, "Brent always talked about Bernard, it was always the 'Bernard project,' and I didn't see that when I signed these documents, but I understand that it's there now. But, at the time that he presented this to me, I always knew of it as the 'Bernard Street project,' and it included his vision of the whole project, not just this building." Trial Tr. (Dec. 18, 2017) at 20:12-18. She also stated, "[w]hen Brent talked about the Bernard project, it was always the first two buildings were being completed, also." *Id.* at 18:21-22. The Ziebarths seem particularly aggrieved by Sharon's use of the word "project" in her testimony, which they contend had a special meaning to Brent and Sharon that was unknown to the Ziebarths.

30

Inexplicably, the Ziebarths contend that Sharon's testimony that she did not see the loan agreement's restriction on the use of the loan proceeds is irrelevant. But it is not irrelevant, as it goes directly to the question of Sharon's subjective knowledge and intent. If she did not know the loan proceeds were restricted to new construction, she could not have had any intent to deceive the Ziebarths at the time the loan agreement was signed.

The Ziebarths also argue that the bankruptcy court should have applied a different standard in assessing intent to deceive, quoting *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1143 (9th Cir. 2002) ("According to the Restatement, an action is intentional if an actor subjectively 'desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it.' " (citing Restatement (Second) of Torts § 8A (1964))). But the quoted language from *Su* refers to the standard for establishing the intent to injure required to prove a willful injury under § 523(a)(6), not the standard for establishing intent to deceive under § 523(a)(2)(A). In any event, the Ziebarths point to no evidence in the record that Sharon knew or believed that the Ziebarths would be injured if they signed the loan agreement.

The Ziebarths contend that Gary Ziebarth's statement that Sharon still believed in Brent was not a valid basis for concluding that Sharon lacked an intent to deceive because his opinion as to what Sharon believed is irrelevant. But Sharon herself testified that at the time the loan agreement

was signed she believed Brent could successfully develop the Bernard Property.

Finally, the Ziebarths argue that if the Panel does not reverse, the judgment should be vacated and the matter remanded for the court to decide the issues identified in the joint pretrial statement. But remand is not required if a complete understanding of the issues may be obtained from the record as a whole. *Veal v. Am. Home Mortg. Serv., Inc. (In re Veal)*, 450 B.R. 897, 919 (9th Cir. BAP 2011). Here, the record fully supports the bankruptcy court's conclusion that the Ziebarths did not prove knowledge of falsity or intent to deceive on Sharon's part.

For these reasons, we find no error in the bankruptcy court's dismissal of the § 523(a)(2)(A) claim against Sharon.

**D.    The bankruptcy court did not err in entering judgment for Sharon on the Ziebarths' § 523(a)(4) claim for embezzlement.**

In their SAC, the Ziebarths included two claims under § 523(a)(4), one for fraud while acting in a fiduciary capacity and the other for embezzlement. The former claim had previously been dismissed on Sharon's Civil Rule 12(b)(6) motion, but the complaint stated that it was being included to preserve the issue for appeal. The bankruptcy court's Statement of Decision addressed only the former claim, stating that the Ziebarths were not entitled to judgment on that claim because "[t]here was no evidence of an express trust or that Plaintiffs' claim arose from fraud or

defalcation by Defendant. Moreover, there was absolutely no evidence that Defendant was a fiduciary of Plaintiffs." The bankruptcy court made no finding as to the embezzlement claim. As such, the Ziebarths contend the judgment must be vacated and remanded for such findings.

To prevail on a claim for embezzlement under § 523(a)(4), a plaintiff must prove three elements: (1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. *Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991).

As noted, even if the bankruptcy court has not made complete findings, we need not remand if a complete understanding of the issues may be obtained from the record as a whole. *In re Veal*, 450 B.R. at 919. We have reviewed the record in this case and have found no evidence that would support an embezzlement claim. Importantly, there was no evidence presented that Sharon misappropriated the loan proceeds. The undisputed evidence was that Brent, not Sharon, withdrew all of the funds from the line of credit. And the Ziebarths have not pointed this Panel to any evidence in the record that would support an embezzlement claim against Sharon.[11] We note also that although the Ziebarths asserted in their

---

[11]Also, the funds misappropriated must have belonged to the plaintiff. *Zamani v.*

(continued...)

closing statement to the bankruptcy court that Sharon was liable for embezzlement, they did not analyze that claim or identify any evidence at trial to support such a claim.

**E.     The bankruptcy court did not err by not including language in the judgment finding that any debt Brent owed to the Ziebarths would be nondischargeable in a bankruptcy proceeding.**

In its Statement of Decision, the court addressed the Ziebarths' request to find any debt Brent owed to the Ziebarths nondischargeable:

> The Court is not sure what to make of the Plaintiffs' request that Brent not benefit from Defendant's discharge. Defendant is entitled to the benefits of her bankruptcy discharge. If Brent attempts to use Defendant's discharge to inappropriately shield himself from liability, this Court has no doubt that the Plaintiffs will take appropriate countermeasures.

On appeal, the Ziebarths argue that in light of the undisputed evidence against Brent, the bankruptcy court erred in refusing to grant this relief. We disagree, for the same reasons we conclude that the bankruptcy court did not err in dismissing the claims against Brent. First, the bankruptcy court had no jurisdiction over the claims against Brent, and second, any such finding would have constituted an impermissible advisory opinion. The bankruptcy court did not err.

---

[11](...continued)
*Razavi (In re Razavi)*, 539 B.R. 574, 560 (Bankr. N.D. Cal. 2015). It is difficult to imagine under what theory the Ziebarths could have shown they "owned" the line of credit proceeds.

**F. We need not consider the bankruptcy court's denial of the Ziebarths' motion for a new trial.**

Although the Ziebarths listed denial of the motion for a new trial in their statement of issues, they made no arguments in their opening brief explaining how the bankruptcy court abused its discretion in that ruling. Accordingly, we will not consider this issue on appeal. *See Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 143 (9th Cir. BAP 1997) ("We will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (Citations omitted)).

## CONCLUSION

For the reasons explained above, we AFFIRM the bankruptcy court's orders dismissing with prejudice all claims against Brent and the § 523(a)(4) claim for fraud or defalcation while acting in a fiduciary capacity against Sharon. We also affirm the bankruptcy court's judgment in favor of Sharon on the §§ 523 and 727 claims. We VACATE and REMAND the order and the portion of the judgment dismissing the objection to exemption claim for further proceedings in accordance with this disposition.